1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  UNITED STATES of AMERICA,

4          -against-                    19 CR 386
                                        Plea
5
   MAYYA TATSENE,
6
               Defendant.
7
   ------------------------------------x
8
                              United States Courthouse
9                             White Plains, New York
10
                              May 29, 2019
11
12              THE HONORABLE LISA MARGARET SMITH,
                              District Court Magistrate Judge
13

14
   GEOFFREY S. BERMAN
15      United States Attorney for
        the Southern District of New York
16  JEFFREY COFFMAN
        Assistant United States Attorney
17

18
   LAW OFFICES OF JEFFREY GOLDSTEIN
19          Attorney for Defendant
   BY:  JEFFREY GOLDSTEIN
20

21

22

23

24

25

            Angela O'Donnell, RPR, 914-390-4025

1          THE CLERK:  In the matter of the United States of

2    America versus Mayya Tatsene.

3          Counsel, please note your appearance for the record.

4          MR. COFFMAN:  Assistant States Attorney Jeffrey

5    Coffman for the government.

6          Good afternoon, your Honor.

7          THE COURT:  Good afternoon, Mr. Coffman.

8          MR. COFFMAN:  I'm joined here at counsel table by FBI

9    Special Agent Amy Solek.

10          THE COURT:  Good afternoon.

11          SPECIAL AGENT SOLEK:  Thank you.

12          MR. GOLDSTEIN:  Good afternoon, Judge.

13          David Goldstein, 777 Chestnut Ridge Road, Chestnut

14    Ridge, New York, for Ms. Tatsene, who's seated to my right.

15          THE COURT:  Good afternoon, Mr. Goldstein.

16          Do I understand that this is your client's first

17    appearance?

18          MR. GOLDSTEIN:  It is, your Honor.

19          THE COURT:  And that she is consenting to the filing

20    of an information?

21          MR. GOLDSTEIN:  Correct.

22          THE COURT:  If appropriate, she's also planning to

23    enter a plea of guilty; is that right?

24          MR. GOLDSTEIN:  Correct.

25          THE COURT:  Pursuant to an agreement, a copy of which

1   has been provided to me.

2              MR. GOLDSTEIN:  Yes, your Honor.

3              THE COURT:  All right.  Ms. Tatsene, stand up,

4   please.

5              I want to advise you that this is not a trial.  It is

6   my understanding that you have decided to waive indictment and

7   consent to the filing of a felony information and that you have

8   also decided to enter a plea of guilty in this case.  This

9   proceeding is a preliminary proceeding at which I am going to

10  advise you of certain of your rights and a district judge will

11  be selected to hear your case, after which you may have the

12  option of entering your plea before that district judge or you

13  may have the option of entering your plea before me.

14             This proceeding is also for the purpose of ensuring

15  that you are aware of your rights in connection with the waiver

16  of indictment and the proposed plea of guilty, and that any

17  waiver of those rights is knowing and voluntary prior to filing

18  the felony information and prior to entering your plea of

19  guilty, if you still decide to do that.

20             During this proceeding I am also going to ask you

21  some questions to make sure that you are competent to waive

22  indictment and to plead guilty.  By that I mean that I need to

23  determine whether you are able to understand what is going on

24  here today and that you are not under the influence of any

25  physical or mental or emotional condition, or affected by any

1  controlled substance which may impact upon your ability to

2  understand what is going on.

3          Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Ms. Tatsene, if at any time you do not

6  hear or understand what I say to you, I want you to interrupt

7  me so that I can repeat and explain what I've said and so that

8  you can have an opportunity to consult with Mr. Goldstein to

9  make sure that you have heard and understood everything I've

10  said and everything I've asked you.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And will you do that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  I want to advise you that you have an

16  absolute right to remain silent at this and at every stage of

17  the proceedings.  Any statement that you do make may be used

18  against you.  You have this right to remain silent even if you

19  have already made statements to law enforcement officers and

20  you are not required to answer any questions that law

21  enforcement officers ask you from this moment on.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  You have an absolute right to be

25  represented by counsel at this and at every stage of the

1    proceedings against you, including representation during any

2    questioning by the authorities, during any lineup, and at all

3    court proceedings, including this one, and you have the right

4    to consult with your attorney prior to answering any questions.

5                THE DEFENDANT:  Do you understand that?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  For that reason, you should consult with

8    your attorney before answering any further questions, including

9    questions that I'm going to ask you during this proceeding.

10                Do you understand that?

11                THE DEFENDANT:  Yes, your Honor.

12                THE COURT:  Mr. Goldstein, are you retained or

13    appointed in the matter?

14                MR. GOLDSTEIN:  Retained, your Honor.

15                THE COURT:  Ms. Tatsene, if you were to become unable

16    to afford your attorney's services, you would be entitled to

17    apply to the Court for a new attorney to represent you, and if

18    the Court was satisfied that you could not afford to hire a

19    lawyer and that there was an appropriate reason to relieve your

20    current lawyer, a new lawyer would be appointed to represent

21    you with no cost to you.

22                Do you understand that?

23                THE DEFENDANT:  Yes, your Honor.

24                THE COURT:  Ms. Embola, would you place the defendant

25    under oath or after affirmation, please.

1          (Mayya Tatsene sworn)

2          THE COURT:  It is important for you to understand

3     that if you knowingly make a false statement during these

4     proceedings, you could be subject to prosecution for the crime

5     of perjury or for making a false statement to the Court, and

6     you could face a punishment of up to five years in prison and a

7     $250,000 fine for committing such a crime.  Such punishment

8     would be separate and apart from any sentence you may be facing

9     on the crimes charged in the felony information.  In addition,

10    any statement that you make during this proceeding may be used

11    against you for purposes of such a prosecution.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  What's your full name?

15          THE DEFENDANT:  Mayya Tatsene.

16          THE COURT:  How old are you?

17          THE DEFENDANT:  Sixty-four.

18          THE COURT:  Do you read, write, speak and understand

19    the English language?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  I understand that English is not your

22    native language.

23          THE DEFENDANT:  No.

24          THE COURT:  Is that correct?

25          THE DEFENDANT:  Yes.

1          THE COURT:  What's your native language?

2          THE DEFENDANT:  Russian.

3          THE COURT:  If you have had any difficulty

4    understanding me, we can make arrangements for you to have an

5    interpreter, but that would have to happen on some other day.

6          Do you wish to have an interpreter to assist you in

7    understanding everything that's happening here today?

8          THE DEFENDANT:  No, thank you.

9          THE COURT:  Have you been able to understand

10   everything I've said to you so far?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  If there's anything you do not understand

13   that I say to you, I want you to tell me so that we can make

14   sure you understand everything that's being said and especially

15   everything that I ask you.

16         Will you do that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  How far did you go in school,

19   Ms. Tatsene?

20         THE DEFENDANT:  I'm a medical doctor.

21         THE COURT:  Have you been treated within the last

22   three months for any mental illness or for addiction to drugs

23   or to alcohol?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  Have you, either today or on any other --

1    at any other time in your life, have you taken or used any

2    drugs, marijuana, alcohol, medication, or any other substance

3    which currently affects your ability to think or to understand

4    these proceedings that are going on here today?

5                 THE DEFENDANT:  No, your Honor.

6                 THE COURT:  Mr. Goldstein, have you discussed this

7    matter fully with Ms. Tatsene?

8                 MR. GOLDSTEIN:  I have.

9                 THE COURT:  Are you satisfied that she is fully

10   capable of understanding and participating in this proceeding?

11                MR. GOLDSTEIN:  Yes.

12                THE COURT:  Mr. Coffman, do you have any doubt that

13   the defendant is competent to participate in this proceeding?

14                MR. COFFMAN:  No doubt, your Honor.

15                THE COURT:  I'm satisfied on the basis of these

16   representations and my observations of the defendant that this

17   defendant, Mayya Tatsene, is fully competent to understand and

18   participate in this proceeding.

19                You are charged in this felony information with one

20   count of conspiracy to commit wire fraud, one count of wire

21   fraud and a forfeiture allegation in connection with both of

22   those counts.

23                Ms. Embola, would you arraign the defendant on the

24   waiver of indictment, please.

25                THE CLERK:  Ms. Tatsene, have you signed this waiver

1   of indictment?

2            THE DEFENDANT:  Yes, I have.

3            THE CLERK:  Have you signed it voluntarily?

4            THE DEFENDANT:  Yes.

5            THE CLERK:  Before signing this waiver, did you

6   discuss it with your attorney?

7            THE DEFENDANT:  Yes, I have.

8            THE COURT:  Did your attorney explain this waiver to

9   you?

10            THE DEFENDANT:  Yes.

11            THE CLERK:  Do you understand that you are under no

12   obligation to waive indictment?

13            THE DEFENDANT:  Yes.

14            THE CLERK:  Do you understand that if you don't waive

15   indictment and the government wants to prosecute you, they will

16   have to present your case to a Grand Jury which may or may not

17   indict you?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you understand what a Grand Jury is?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Have you seen a copy of the felony

22   information?

23            THE DEFENDANT:  Yes, I have.

24            THE COURT:  Do you waive its public reading?

25            THE DEFENDANT:  Yes.

1          THE COURT:  The written waiver of indictment is

2     accepted.  I'm signing it.  And it will remain in the Court's

3     file as Court Exhibit 1 for today's date.

4          Mr. Goldstein, for purposes of this preliminary

5     proceeding, how does your client plead?

6          MR. GOLDSTEIN:  Not guilty.

7          THE COURT:  A not guilty plea is entered.

8          Before a District Judge is selected, what's the

9     Government's position with regard to bail?

10          MR. COFFMAN:  Your Honor, the government would

11     request that the Court release the defendant on certain

12     conditions.

13          THE COURT:  Those being?

14          MR. COFFMAN:  Specifically, your Honor, the

15     government would request the Court restrict the defendant's

16     travel to the states of New York and New Jersey; that the

17     defendant surrender any remaining passports.  I understand she

18     surrendered her US passport to Pretrial Services today, has one

19     other passport, Lithuanian passport.  The government would ask

20     that she be given till the end of next week to give that to

21     Pretrial Services.  The government would also request that she

22     be ordered not to apply for any new passports, and that she be

23     required to sign a $100,000 bond to be cosigned by one

24     financially responsible party.

25          I think the defendant would have one of her sons sign

1    the bond.  We would ask that she be given until the end of next

2    week to have that person sign the bond as well.

3              And then standard conditions of probation, your

4    Honor -- pretrial release, rather, your Honor.

5              THE COURT:  All right.  Mr. Goldstein?

6              MR. GOLDSTEIN:  Yes, your Honor.  We brought it to

7    the attention this afternoon that there was a second passport

8    and that's why it's not in the report that you see from

9    Pretrial, but we will surrender that by the end of next week,

10   before Friday, 4:30 of next week, and we will also have her son

11   come prior to that moment to sign a personal bond, along with

12   my client.

13             We accept those conditions, your Honor, if your Honor

14   would set those.

15             THE COURT:  All right.  I will release the defendant

16   on a $100,000 personal recognizance bond to be cosigned by one

17   financially responsible person no later than June 7th.  The

18   defendant may be released on her own signature today.

19             She is to surrender any additional passports no later

20   than June 7th to Pretrial Services and is prohibited from

21   obtaining any new or additional travel or replacement travel

22   documents.  Her travel is restricted to the districts of

23   New York and New Jersey.  And she will be subject to standard

24   Pretrial Services supervision.

25             MR. GOLDSTEIN:  It has to be with supervision?

1          THE COURT:  You said standard conditions --

2          MR. COFFMAN:  Your Honor, I'm specifically thinking

3    of not supervision by Pretrial but the conditions that she not

4    commit another felony.  That she report to Pretrial if she's --

5          MR. GOLDSTEIN:  (indiscernible).

6          MR. COFFMAN:  Right.

7          THE COURT:  All right.  I will remove the condition

8    for supervision, except that if the defendant is questioned by

9    the authorities or arrested for any other offense, she is to

10   report that to Pretrial Services.  If there is any change of

11   residence, she's also to report that to Pretrial Services.

12          You should understand, Ms. Tatsene, this is a setting

13   of bail.  This means that upon your release you must refrain

14   from committing any violations of law whatsoever, including

15   federal, state, and local crimes.  If you commit a felony while

16   you are on release for this charge, you may be subject to an

17   additional prison term of up to ten years.  That's in addition

18   to what you're facing on this charge and in addition to what

19   you may be facing on the new charge.

20          If you commit a misdemeanor while you are on release,

21   the additional prison term would be up to one year.  You must

22   inform the Pretrial Services officer if you are accused of

23   committing a crime, whether it is by arrest, interview or in

24   any other fashion.

25          During the period of your release, your travel is

Angela O'Donnell, RPR, 914-390-4025

1    restricted to the districts of New York and New Jersey, and you

2    must obtain the Court's permission before you may travel

3    outside those areas for any reason.

4            So for example, if you had a doctor's appointment in

5    Greenwich, Connecticut, you would not be permitted to go to

6    that appointment until you communicated with Mr. Goldstein.  He

7    will communicate with me and you would have to wait until I

8    granted permission for you to leave the state of New York or

9    the state of New Jersey.

10            Do you understand that?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  If you violate any of the conditions of

13    your release, your bail may be immediately revoked and you may

14    be detained pending trial.  In addition, you may be prosecuted

15    for contempt of court.  If you fail to appear in court when you

16    are required to do so, you may be committing the crime of bail

17    jumping, which would subject you to an additional punishment

18    separate and apart from the charges you are facing here.  The

19    punishment for bail jumping in this case is up to ten years and

20    a $250,000 fine.

21            Do you understand that?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  All right.  This is a wheel B case.

24            Ms. Embola, may I have a card, please.

25            The matter is assigned to Judge Briccetti.  Although

1    he does prefer to do his own guilty pleas of late, he's been

2    referring guilty pleas to the designated magistrate judge.

3              Mr. Goldstein, would you like us to check with Judge

4    Briccetti's chambers to see if he wants us to proceed with the

5    plea?

6              MR. GOLDSTEIN:  Judge, I think he'll take the bad

7    news that you took the plea in stride.

8              THE COURT:  Well, I need to check with him first.

9              MR. GOLDSTEIN:  I understand.  But we have no

10   objection to your Honor taking the plea.

11             THE COURT:  All right.  Go ahead.  Why don't you make

12   a call.

13             (Pause)

14             THE COURT:  Referred to us?

15             THE CLERK:  Referred to us.

16             THE COURT:  Okay.  All right.  Judge Briccetti's

17   chambers has informed my deputy that we may proceed with the

18   guilty plea.

19             I have before me a plea agreement dated April 16,

20   2019.  I understand, Mr. Coffman, there's been one minor change

21   on page 2 in the second paragraph.

22             MR. COFFMAN:  That's correct, your Honor.  And I also

23   neglected to ask for the case number to write on the top.

24             THE COURT:  Case number is 19CR386.

25             MR. COFFMAN:  Thank you.

Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  And you've notified Mr. Goldstein of the

2    change?

3          MR. COFFMAN:  I apologize, your Honor.  I missed that

4    last question.

5          THE COURT:  You've notified Mr. Goldstein of the

6    change on the second page?

7          MR. COFFMAN:  Yes, your Honor.

8          THE COURT:  All right.  Mr. Goldstein, do I

9    understand correctly that it is your client's wish to proceed

10   before me?

11         MR. GOLDSTEIN:  Correct, your Honor.

12         THE COURT:  Ms. Tatsene, this proceeding is referred

13   to as a plea allocution.  I want you to understand that you

14   have the absolute right to have this plea allocution conducted

15   before a United States District Judge.  It is the District

16   Judge, in this case Judge Briccetti, who will impose sentence

17   in your case.  If you consent and if you agree, then I will

18   conduct the plea allocution and I will then make a report to

19   Judge Briccetti in which I will recommend whether or not he

20   should accept your plea of guilty.  I will make that

21   recommendation based on the information that is brought out

22   during today's proceedings.  It is important for you to

23   understand that the Court will not accept your plea unless the

24   Court is satisfied that you fully understand all of your rights

25   and that you are, in fact, guilty.

Angela O'Donnell, RPR, 914-390-4025

```
1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that you have an

4    absolute right to have this plea allocution conducted before a

5    United States District Judge?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you agree and is it your wish that I

8    should conduct the plea allocution?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Ms. Embola, would you have the defendant

11   identify her signature on the consent form, please.

12             THE CLERK:  Ms. Tatsene, I show you this consent

13   form.  Is this your signature affixed to the document?

14             THE DEFENDANT:  This is.

15             THE CLERK:  Have you read this document and discussed

16   it with your attorney?

17             THE DEFENDANT:  Yes, I have.

18             THE COURT:  Did anyone threaten you or coerce you or

19   promise you anything in order to get you to sign this consent

20   form?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Did you sign the form freely and

23   voluntarily?

24             THE DEFENDANT:  Yes, I did.

25             THE COURT:  Mr. Goldstein, do you know of any reason
```

1  why the waiver and consent to proceed with a felony plea

2  allocution before a United States Magistrate Judge should not

3  be accepted?

4        MR. GOLDSTEIN:  No, your Honor.

5        THE COURT:  I find that Mayya Tatsene is fully

6  competent and capable of waiving her right to appear before a

7  United States District Judge in order to enter her plea of

8  guilty.  I therefore accept the consent form, which I have

9  signed and which will remain a part of the Court's record as

10 Court Exhibit 2.

11       Do you understand that your right to be represented

12 by an attorney continues through every stage of the

13 proceedings, including trial and appeal, and that you have this

14 right whether or not you choose to plead guilty to these

15 offenses?

16       Do you understand that?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  Have you had sufficient opportunity to

19 consult with your attorney about your case and especially about

20 your decision to plead guilty?

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  Are you satisfied with the services which

23 counsel has provided to you?

24       THE DEFENDANT:  Yes, your Honor.

25       THE COURT:  Have you told him everything you know

1    about this case?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  The original plea agreement is to be

4    marked as Government Exhibit 1 and it will -- the original will

5    remain in the custody of government's counsel after this

6    proceeding.

7              Ms. Embola, would you have the defendant identify her

8    signature on the last page of the plea agreement, please.

9              THE CLERK:  Ms. Tatsene, I'm showing you this plea

10   agreement.  Is this your signature affixed to the document?

11             THE DEFENDANT:  Yes, it is.

12             THE CLERK:  Have you read this document and discussed

13   it with your attorney?

14             THE DEFENDANT:  Yes, I have.

15             THE COURT:  Mr. Goldstein, did you review each and

16   every part of this plea agreement with your client?

17             MR. GOLDSTEIN:  I did.

18             THE COURT:  Ms. Tatsene, are you satisfied that you

19   understand the entire plea agreement which Mr. Goldstein has

20   reviewed with you?

21             THE DEFENDANT:  Yes, I am.

22             THE COURT:  Do you have any questions, either for

23   your lawyer or for me about what this plea agreement says?

24             THE DEFENDANT:  No.

25             THE COURT:  Does the plea agreement contain the

1    complete understanding between you and the government in

2    connection with this case?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand that anything which is

5    not set forth in the written plea agreement or which is not

6    told to me at this time on the record will not be binding on

7    the outcome of your case?

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Mr. Coffman, is there anything beyond the

11   written plea agreement that the Court should be aware of?

12           MR. COFFMAN:  No, your Honor.

13           THE COURT:  Mr. Goldstein, is there any other

14   agreement or understanding that the Court should know about?

15           MR. GOLDSTEIN:  There is not.

16           THE COURT:  Ms. Tatsene, did you sign the plea

17   agreement freely and voluntarily?

18           THE DEFENDANT:  Yes, I have.

19           THE COURT:  Did anyone force you or coerce you or

20   threaten you or promise you anything other than what is set

21   forth in the written plea agreement in order to get you to sign

22   that plea agreement?

23           THE DEFENDANT:  No.

24           THE COURT:  Ms. Tatsene, if you were convicted of the

25   charges set forth in this felony information, either after

1  trial or by plea of guilty, you would be subject on Count One

2  to a maximum term of imprisonment of 20 years, a maximum term

3  of supervised release of 3 years, a maximum fine of the

4  greatest of $250,000 or twice the gross gain or twice the gross

5  loss resulting from the offense, and a mandatory $100 special

6  assessment.

7  You would be subject to Count Two to a maximum term

8  of imprisonment of 20 years, a maximum term of supervised

9  release of 3 years, a maximum fine of the greatest of $250,000,

10  or twice the gross gain or twice the gross loss resulting from

11  the offense, and a mandatory $100 special assessment.  The

12  total maximum sentence of incarceration on the two counts is 40

13  years in prison.

14  You are also -- sorry.  If you're sentenced to a term

15  of imprisonment, even if you are sentenced to the maximum term

16  of imprisonment, and if you are also sentenced to a term of

17  supervised release, if you then violate the conditions of your

18  supervised release, you could be sentenced to an additional

19  term of imprisonment of up to two years on each of the counts

20  for a potential additional sentence of up to four years.

21  In addition, if you violate the conditions of your

22  supervised release, you would not receive credit for any time

23  already served in prison, or for time served on supervised

24  release.  You are also subject to the possibility of an order

25  of forfeiture or restitution, and the Court is authorized to

1    order either forfeiture or restitution or both as a part of

2    your sentence.

3            In addition, you have agreed in your plea agreement

4    that you will make restitution and that you will also admit to

5    the forfeiture allegation with respect to Counts One and Two

6    which is set forth in the information.

7            Mr. Coffman, do we have a maximum amount of

8    forfeiture and/or restitution?

9            MR. COFFMAN:  Your Honor, with respect to both

10   forfeiture and restitution, there's no statutory maximum.  We

11   don't have a precise number.  What I can say is that the total

12   revenue to AMA from the fraudulent activity during the relevant

13   time period was in excess of $25 million, but there are factual

14   and legal issues that may result in a substantially lower

15   restitution and forfeiture.

16           THE COURT:  I take it then that you would agree that

17   a hearing may be necessary to determine the appropriate

18   amounts?

19           MR. COFFMAN:  That is possible, your Honor.

20           THE COURT:  All right.

21           It is important for you to understand that if you

22   admit to the forfeiture allegation, which you have agreed to

23   do, that you will give up your right to have a hearing to

24   determine whether forfeiture is appropriate.  You would still

25   be entitled to a hearing to determine the amount of such

1    forfeiture.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  For purposes of such a hearing, you are

5    entitled to the assistance of counsel and to have an attorney

6    appointed to represent you without fee if you cannot afford an

7    attorney.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you understand that these are the

11   possible sentences that could be imposed following your plea of

12   guilty in this matter?

13         THE DEFENDANT:  Yes.

14         THE COURT:  I am required to advise you, although I

15   understand that you are a naturalized United States citizen,

16   I'm still required by law to tell you -- excuse me.  If you

17   were not a United States citizen, a finding that you are guilty

18   of a felony offense may have a negative impact upon your

19   immigration status and upon any application you may have made

20   or which you may make in the future for permission to remain in

21   the United States or to become a United States citizen.

22         You also may be subject to an order of deportation as

23   a result of this guilty plea if you are not a United States

24   citizen, and under certain circumstances deportation may be

25   mandatory.  Additionally, if you are deported, you may be

1    prohibited from reentering the United States permanently unless

2    you are able to get permission to re-enter from the Attorney

3    General of the United States or from the Secretary of Homeland

4    Security.

5              Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you also understand that you are

8    pleading guilty to a felony offense?  I'm very sorry.

9              Do you also understand that you are pleading guilty

10   to a felony offense and that such an adjudication may deprive

11   you of certain valuable civil rights which may include the

12   right to vote, the right to hold public office, the right to

13   serve on a jury, the right to possess any type of firearm,

14   including rifles and shotguns, the right to be considered for

15   certain types of employment or to be bonded, or to serve in the

16   United States military, and the right to possess or obtain

17   certain government-issued licenses, including licenses that may

18   be required in certain professions and occupations?

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Okay.  Counsel -- and I guess I'm

22   directing this to both of you -- has there been any discussion

23   of the impact of the plea on Ms. Tatsene's ability to practice

24   medicine?

25             MR. COFFMAN:  Your Honor, there has not.  But my

1   understanding is that she is not licensed to practice medicine

2   in the US.

3              MR. GOLDSTEIN:  And is retired so...

4              THE COURT:  All right.

5              Where an offense involves fraud or other

6   intentionally deceptive practices, the Court may also order you

7   to provide notice of your conviction to victims of the offense

8   at your own cost.

9              Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that these are the

12  possible legal consequences of entering a guilty plea in this

13  case?

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that the United States

17  Sentencing Commission has issued guidelines for judges to

18  follow in determining the appropriate sentence in a criminal

19  case?

20             Do you understand that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you also understand that these

23  guidelines are not mandatory but they must be considered by the

24  Court, along with other factors which are listed at Title 18,

25  United States Code, Section 3553, and the judge must consider

 1  all of these things when the judge determines the appropriate

 2  sentence to impose, including whether to grant departures from

 3  the guidelines, both upward departures and downward departures?

 4          Do you understand that?

 5          THE DEFENDANT:  Yes.

 6          THE COURT:  Have you and Mr. Goldstein talked about

 7  how the sentencing guidelines would be calculated in your case?

 8          MR. GOLDSTEIN:  Judge, we've discussed that but even

 9  with the United States Attorney, we do not have the actual

10  numbers because that will inflate it to a higher degree.  But

11  we've discussed all the other options concerning what goes into

12  the guidelines.

13          THE COURT:  Well, I'm concerned.

14          Do you understand what Mr. Goldstein has discussed

15  with you with regard to how your sentence may be calculated in

16  this case?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  Are you satisfied that you

19  have a sufficient understanding of how the guidelines would

20  apply in this matter?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do you understand that the district judge

23  will consider the guidelines but that he will impose a sentence

24  in accordance with the statute, which in this case means that

25  the prison term will be not more than 20 years on each of the

1   two counts?

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you understand that the Court will not

5   be able to determine the appropriate sentence in your case

6   until after a presentence report has been prepared, and until

7   you and your attorney, as well as the government, have had an

8   opportunity to challenge the facts that are reported in the

9   presentence report, as well as the calculation of the

10  sentencing guideline range, and any sentencing recommendation

11  in that report?

12             Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you also understand that if there are

15  any objections to the presentence report, that those objections

16  will be ruled on by the Court, and if necessary, a hearing will

17  be held to determine what information is relevant to the

18  Court's determination of the sentence?

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do you understand that if you disagree

22  with the Court's sentencing decision, that will not give you a

23  basis for withdrawing your plea of guilty?

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Do you understand that parole has been

2     abolished, and if you are sentenced to a prison term, you will

3     not be eligible for early release on parole?

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Even though you would not be eligible for

7     parole, you may, if you are sentenced to a term of

8     imprisonment, you may be eligible to earn credit for good

9     behavior, but even if you were to succeed in earning credit for

10    good behavior, you would be required to serve at least

11    85 percent of any prison term before you may be eligible for

12    release?

13         Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand that you do not have to

16    plead guilty and you have an absolute right to plead not guilty

17    and to have the matter go to trial by judge or by jury?

18         Do you understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that if you choose to

21    plead not guilty, you are entitled to have a speedy and public

22    trial of your case?

23         Do you understand that?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that at any trial of

1  this matter, you would be entitled to the presumption of

2  innocence and that the presumption would remain with you until

3  the government proves each and every element of any one or more

4  of the crimes charged against you beyond a reasonable doubt to

5  the satisfaction of the judge, if it is a judge trial, or to

6  the unanimous satisfaction of the jury, if it is a jury trial?

7          Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  At such a trial, you would have the

10  right, with the assistance of your attorney, to confront and

11  cross examine the witnesses against you.  You would have the

12  right to call witnesses to testify for you and to have

13  subpoenas issued to compel witnesses to give testimony and to

14  produce evidence.

15          You would also have the right to testify at your

16  trial, but you could not be forced to testify.  If you decided

17  not to testify, your decision to remain silent could not be

18  held against you in any way.  At your trial you would also have

19  the right I have spoken of, to the assistance of an attorney,

20  and to have an attorney appointed to represent you without fee

21  if you could not afford counsel.

22          Do you understand that if you plead guilty to the

23  charges in this felony information, that you would give up your

24  right to a trial, and except for the right to counsel, which

25  you retain, you would also give up all the other rights which I

1  have explained to you here?

2          Do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Ms. Tatsene, have you clearly heard and

5  understood everything I've said to you?

6          THE DEFENDANT:  Yes, I did.

7          THE COURT:  Have you understood each of the rights

8  that I have asked you about?

9          THE DEFENDANT:  Yes, I have.

10          THE COURT:  Do you have any questions, either for me

11  or for Mr. Goldstein, about anything I've said or about

12  anything I've asked you?

13          THE DEFENDANT:  No, thank you.

14          THE COURT:  You may be seated.

15          Mr. Coffman, what are the elements of the offenses

16  and what is the government prepared to prove at trial in order

17  to establish those elements and the forfeiture allegation?

18          MR. COFFMAN:  Your Honor, with respect to Count One,

19  conspiracy to commit wire fraud, the government would prove at

20  trial the following two elements beyond a reasonable doubt:

21          First, that there was an unlawful agreement between

22  two or more people; the unlawful objective of the agreement

23  being to commit wire fraud.  And second that the defendant

24  knowingly and willfully entered into that agreement.

25          For Count One, the government would not have to prove

1  that the substantive crime of wire fraud was in fact committed,

2  but rather that it was the object of the conspiracy.  But I

3  will set forth the elements of wire fraud not only because it's

4  the object of the offense in Count One, but because these are

5  the same elements that the government would prove beyond a

6  reasonable doubt with respect to the substantive wire fraud

7  offense count charged in Count Two.

8        First -- and there are three elements to the wire

9  fraud offense:

10        First, that the defendant executed a scheme or

11  artifice to defraud or to obtain money or property by

12  materially false pretenses, representations or promises;

13        Second, the defendant knowingly and willfully

14  participated in the scheme or artifice to defraud with

15  knowledge of its fraudulent nature and with specific intent to

16  defraud; and

17        Third, that there was the use of interstate wires in

18  furtherance of the fraud.

19        The government would also prove by a preponderance of

20  the evidence that venue in the Southern District of New York is

21  proper.

22        Your Honor, the government would prove at trial that

23  beginning in or about 2005 and continuing to April 2017, the

24  defendant willfully and knowingly conspired with others to

25  commit wire fraud and committed wire fraud.  Specifically, the

1    government would prove that the defendant was the clinical

2    laboratory director of AMA Laboratories in Rockland County,

3    New York.  AMA Laboratories tested the efficacy and safety of

4    cosmetics, sunscreens and other products on specified numbers

5    of volunteer panelists in exchange for fees paid by consumer

6    products companies.

7            From at least in or about 2005, through in or about

8    April 2017, the defendant and other employees of the

9    laboratory, tested products on materially lower numbers of

10   panelists than the number specified by the laboratory's

11   customers.  The defendant and other laboratory employees then

12   falsely represented to the laboratory's customers that they had

13   tested the products on the numbers of panelists specified by

14   the laboratory's customers.  The defendant and other laboratory

15   employees also made materially false and misleading statements

16   about the results of the tests to the laboratory's customers.

17           The defendant and other laboratory employees

18   initially sent the laboratory's reports containing the false

19   information to the laboratory's customers via interstate

20   facsimile, but during the later years sent them by email

21   communications, including interstate email communications.

22           The government's evidence, your Honor, would include

23   documentary evidence, including email communications with the

24   victims and fraudulent reports and panelist data that were

25   seized from the campus of AMA.  It would include testimony from

1   other AMA employees regarding the practices I have just

2   specified.  It would include testimony from victim companies

3   and it would include the defendant's statements.

4           The government's, as to venue, would include, among

5   other things, evidence that AMA and the defendant were

6   physically present and operated from New City, New York, in

7   Rockland County, in the Southern District of New York.

8           THE COURT:  And with regard to the forfeiture

9   allegation, I think you said the total revenues of AMA during

10  this period of time were in excess of $25 million?

11          MR. COFFMAN:  That is correct, your Honor.

12          THE COURT:  Thank you.

13          Ms. Tatsene, stand up.

14          Did you hear and understand what the Assistant United

15  States Attorney said?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand the elements of the

18  offenses to which you are offering a guilty plea?

19          THE DEFENDANT:  Yes.

20          THE COURT:  At this time, how do you wish to plead to

21  the charge of conspiracy to commit wire fraud as set forth in

22  Count One of the felony information?

23          How do you wish to plead?

24          THE DEFENDANT:  I plead guilty.

25          THE COURT:  How do you wish to plead to the charge of

1    wire fraud as charged in Count Two of the pending felony

2    information?

3            How do you wish to plead?

4            THE DEFENDANT:  I plead guilty.

5            THE COURT:  Do you wish to admit or deny the

6    forfeiture allegation?

7            THE DEFENDANT:  To admit.

8            THE COURT:  Has anyone threatened you or coerced you

9    or pressured you improperly in order to get you to plead guilty

10   to these charges and admit to this forfeiture allegation?

11           THE DEFENDANT:  No.

12           THE COURT:  Has anyone made any promises to you,

13   other than what is set forth in the plea agreement, in order to

14   induce you to plead guilty and to admit to this forfeiture

15   allegation?

16           THE DEFENDANT:  No.

17           THE COURT:  Has anyone made any specific promise to

18   you about what the sentence of the Court will be?

19           THE DEFENDANT:  No.

20           THE COURT:  Ms. Tatsene, tell me in your own words

21   what you did to commit these crimes.

22           THE DEFENDANT:  Well, I was an employee and clinical

23   laboratory director of AMA Laboratories, a consumer products

24   testing laboratory in Rockland County, New York.

25           Our lab tested products, cosmetics, sunscreen and

1   data products on a number of volunteers who would receive their

2   fees paid by AMA.

3          I worked there from 2005 through April of 2017.  I

4   was in charge of the Repeat Insult Patch Test laboratory, RIPT,

5   at AMA.

6          Testing of our products was to be done on a specific

7   number of volunteers.  There came a time around 2006 where the

8   lab became so busy we didn't have enough volunteers to conduct

9   the tests and through conferences with my bosses, I was

10  directed to conduct the tests and submit the reports using less

11  volunteer panelists than customers paid for and sometimes by

12  not reviewing all of the slides.

13         I did so and submitted false reports as to the number

14  of volunteers or subjects to the tests.  I knew these reports

15  would be relied upon just as the previous proper reports were

16  relied upon by the companies that have asked us to test their

17  products.

18         These reports were sent to customers, including

19  customers outside of New York by email communication.

20         THE COURT:  Were some of the reports in the earlier

21  years also sent by fax communication?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You said you were directed to do this.  I

24  want to make sure that I understand you knew what you were

25  doing; is that correct?

```
 1                    THE DEFENDANT:  Yes.

 2                    THE COURT:  And you intentionally participated in the

 3      scheme that you just described; is that correct?

 4                    THE DEFENDANT:  Yes.

 5                    THE COURT:  Did anyone force you to do it?

 6                    THE DEFENDANT:  Well, it will just -- just this

 7      situation.

 8                    MR. GOLDSTEIN:  One moment, please.

 9                    THE COURT:  Sure.  Take your time.

10                    (Pause)

11                    MR. GOLDSTEIN:  Yes, Judge, if you can repeat the

12      question.

13                    THE COURT:  Sure.

14                    Did anyone force you to do what you did?

15                    THE DEFENDANT:  No.

16                    THE COURT:  All right.  Do you agree that as a result

17      of what you have described, the information that was provided

18      to AMA's customers was materially false and misleading?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  Did you commit these acts knowingly and

21      willfully?

22                    THE DEFENDANT:  Yes.

23                    THE COURT:  Did you know it was against the law to do

24      what you were doing?

25                    THE DEFENDANT:  Yes.
```

 1          THE COURT:  Mr. Coffman, is there anything else which

 2    the Court needs to elicit from the defendant before making the

 3    recommendation contemplated by Rule 11?

 4          MR. COFFMAN:  No, your Honor.

 5          THE COURT:  Mr. Goldstein, any other inquiry?

 6          MR. GOLDSTEIN:  No, your Honor.

 7          THE COURT:  Mr. Goldstein, do you know of any reason

 8    why the Court should not recommend acceptance of your client's

 9    plea of guilty in this matter?

10          MR. GOLDSTEIN:  I do not.

11          THE COURT:  Mr. Coffman, is there any reason why the

12    Court should not recommend acceptance of the plea?

13          MR. COFFMAN:  No, your Honor.

14          THE COURT:  Ms. Tatsene, in light of everything that

15    has been said here today, including a statement of the charges

16    against you, the possible penalties you face and the rights you

17    are giving up, is it still your wish to plead guilty to the

18    charge of conspiracy to commit wire fraud and the charge of

19    wire fraud and to admit to the forfeiture allegation?

20          Is that your wish?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Upon this allocution, I find that Mayya

23    Tatsene is fully competent and capable of entering an informed

24    plea.  The plea is knowing and voluntary and is supported by an

25    independent factual basis for each and every element of the

 1    crimes charged.

 2              Accordingly, I respectfully report and recommend to

 3    Judge Briccetti that the plea be accepted and that the

 4    defendant be adjudged guilty of the two offenses charged in the

 5    felony information.  I further report and recommend that the

 6    defendant shall be deemed to have admitted the forfeiture

 7    allegation with the appropriate amount to be determined if

 8    necessary at a hearing.

 9              I direct that a presentence investigation be

10    conducted by the United States Department of Probation.

11              Mr. Coffman, is there going to be a request to

12    adjourn the factual portion of the presentence report?

13              MR. COFFMAN:  Almost certainly, your Honor.

14              THE COURT:  All right.  Nevertheless, I have to give

15    you the appropriate instruction, Mr. Goldstein.

16              You should go to the Department of Probation on the

17    ground floor of this building with your client.

18              Either today or on some other day that will be

19    scheduled, Ms. Tatsene, you are going to be interviewed by a

20    representative of the Department of Probation.  That may not

21    take place right away, but whenever it happens, first of all,

22    you are entitled to have Mr. Goldstein present when you are

23    interviewed.  You must be fully honest and truthful during that

24    interview because if it comes to the Court's attention that you

25    have provided false, incomplete or misleading information, that

```
 1   may be held against you at the time of sentencing.

 2              Do you understand that?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  Absent a request to postpone it, the

 5   interview must be scheduled to occur within 14 days, and again

 6   absent a request to postpone, the prosecution case summary

 7   would have to be submitted no later than 14 days from today.

 8              I further direct the Clerk of the Court to provide a

 9   transcript of these proceedings within 30 days, setting forth

10   my report and recommendation to Judge Briccetti.  The

11   transcript is to come to me for review.

12              The matter is adjourned for sentencing,

13   September 5th, 2019, at 11:00 a.m.  If you're going to be

14   requesting an adjournment of that, let Judge Briccetti's

15   chambers know sufficiently in advance of that date.

16              MR. COFFMAN:  Yes, your Honor.

17              THE COURT:  All right.  Anything further,

18   Mr. Coffman?

19              MR. COFFMAN:  No, thank you, your Honor, for the

20   time.

21              THE COURT:  Mr. Goldstein.

22              MR. GOLDSTEIN:  No, your Honor, thank you.

23              THE COURT:  Thank you.  We are adjourned.

24              (Proceedings concluded)

25                             * * * * *
```

Angela O'Donnell, RPR, 914-390-4025

1    Certified to be a true and accurate

2    transcript of the digital electronic

3    recording to the best of my ability.

4    _____

5    U.S. District Court

6    Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Angela O'Donnell, RPR, 914-390-4025